IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SALVADOR CORREAS (TDCJ No. 1481981), | § § § | |
| Petitioner, | § § | |
| V. | § § | No. 3:14-cv-4311-K-BN |
| LORIE DAVIS, Director Texas Department of Criminal Justice, Correctional Institutions Division,[1] | § § § § § | |
| Respondent. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Petitioner Salvador Correas, a Texas inmate proceeding *pro se*, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons explained below, the application should be denied.

**Applicable Background**

In 2008, following a jury trial, Correas was convicted of one count of burglary and two counts of attempted aggravated sexual assault, and he was sentenced to concurrent terms of 30-, 60-, and 50-years' confinement. *See State v. Correas*, Nos. F-06-68809-Q, F-06-68795-Q, & F-06-68865-Q (204th Dist. Ct., Dallas Cnty., Tex. Jan. 9, 2008). His convictions and sentences were affirmed on direct appeal. *See Correas v.*

---

[1] Lorie Davis has succeeded William Stephens as Director of the Texas Department of Criminal Justice, Correctional Institutions Division, and, as his successor, she is "automatically substituted as a party." FED. R. CIV. P. 25(d).

*State*, Nos. 05-08-00100-CR, 05-08-00101-CR, & 05-08-00102-CR, 2009 WL 1493004 (Tex. App. – Dallas May 29, 2009). And the Texas Court of Criminal Appeals ("CCA") denied his petition for discretionary review. *See Correas v. State*, PD 895-09 (Tex. Crim. App. Sept. 30, 2009).

The CCA also denied Correas's first three state habeas applications (one for each conviction) without written orders on the findings of the trial court made without a live hearing. *See Ex parte Correas*, WR-80,012-01, -02, & -03 (Tex. Crim. App. Aug. 21, 2013) [Dkt. Nos. 13-12, 13-13, & 13-14].

Correas later filed three new state habeas application, which the CCA also denied without written orders. *See Ex parte Correas*, WR-80,012-04, -05, & -06 (Tex. Crim. App. Oct. 8, 2014) [Dkt. Nos. 13-15, 13-16, 13-17, 13-18, 13-19, & 13-20]. Those three denials, the factual predicates of which are based on a December 30, 2012 article in the *Dallas Morning News* concerning the drug use of a victim/witness at Correas's trial, are the state court adjudications now before this Court. And, therefore, the timeliness of Correas's Section 2254 application is based on – and Respondent concedes that the current application is timely under – 28 U.S.C. § 2244(d)(1)(D). *See* Dkt. No. 14.

The facts underlying Correas's convictions are summarized in the Dallas Court of Appeals's decision, which refers to the then-minors by the pseudonyms assigned to them at trial:

> Melanie Akers, twelve years old at the time of trial, testified that, on the day of the offense, a man she identified as appellant knocked on the door of her apartment. Melanie and Melissa were sitting on the couch and

watching cartoons, and their mother had gone to give some food to a neighbor. About three minutes after their mother left, Melanie heard the knock on the door. Melanie thought it was her mother at the door, and she opened the door. Melanie's mother always knocked on the door when she returned, and Melanie did not let other people into the apartment. Appellant put his hand in the doorway, and Melanie and Melissa tried but failed to close the door, so they went into the bedroom. Melanie looked back and saw appellant locking the door behind him. When Melanie got in the bedroom, appellant came in and pulled her pajama pants and her underwear down. Melanie was telling appellant "No," but appellant said he would kill Melanie if she screamed. Melanie started screaming, and Mariela woke up and asked appellant what he was doing. Melanie further testified appellant said he "wanted to kiss [her] down there."

Mariela Akers, sixteen years old at the time of trial, testified her mother's name is Margarita, and she has twin sisters, Melanie and Melissa, who were twelve years old. Mariela testified she lived in a one-bedroom apartment with her sisters and her mother, who cleaned houses and sold food and sodas from her apartment. On a Sunday in June or July of 2006, Mariela woke up because she heard her sister screaming. Mariela could not see very clearly because she wore glasses, but she saw a man holding Melanie, who was not wearing pants or underwear. Mariela started yelling and asking who the man was and what he wanted. Mariela reached for a phone beside the bed, but the man came over to her, slapped her hand, and told her, "If you get the phone, I'm gonna kill you." Mariela asked the man what he wanted, and he pointed at Melanie and said, "All I want to do to her is kiss her down there in her pussy." Mariela was "yelling and screaming," and the man told everyone to shut up or he was going to kill them.

The bedroom door was half open, and Mariela tried to crawl over to it so she could push Melanie out "so she could run out and get the phone or, like, go, just run out, look for my mom." The man grabbed Mariela by her hair and pulled her back and started hitting her with his fists. Melanie came from behind the man to help Mariela, and the man started hitting Melanie. Both Mariela and Melanie were screaming, and the man was telling them to shut up or he would kill them. The man went toward the bed and sat on the floor. Mariela went to the window to try to open it and scream for help. As she was going toward the window she crossed the bed and the man told her to pull down her pants. The man tried to pull down Mariela's pants, and she was holding on to her pajama pants, kicking at him, and screaming and telling him to leave her alone. The man grabbed

-3-

Mariela and hit her again. After he hit her, the man got on his knees, took his wallet out, looked through it, and placed it on the floor.

Mariela "just started screaming" and the man again threatened that he would kill her if she did not shut up. Melanie's pants were on the floor, and the man wrapped them around Mariela's face and kept telling her to shut up or he was going to kill her. Mariela managed to get the pants off her face and throw them away when she heard her mother knocking on the door and calling Mariela's name. The man "started panicking" and telling Mariela and Melanie to shut up. He asked Mariela, "where do I get out?" and Mariela told him he could jump out the window or walk out the front door. Mariela's mother and her uncle came in the bedroom door and hit the man and held him down. Mariela ran out of the room and called 911. Mariela's mother and uncle were able to hold the man down until police arrived. Mariela's mother, Margarita, testified appellant was the man she found in her apartment and held until police came.

*Correas*, 2009 WL 1493004, at \*1-\*2.

## Legal Standards and Analysis

In the state habeas applications filed after the *Dallas Morning News* story, Correas asserted that he was actually innocent because (1) one of the complainants (Mariela) was alleged to be addicted to drugs at the time of the offense, (2) the same complaint allegedly gave false testimony by not divulging her alleged drug addiction, (3) the State failed to disclose that she allegedly suffered from a drug addiction, and (4) the State suborned perjury by portraying the complainant "as an innocent and honest young school girl." Dkt. No. 13-16, state habeas trial court findings of fact and conclusions of law, at 58.

The state court found that the first two grounds could have been raised in Correas's first round of state habeas applications, because he first became aware of the underlying facts on December 30, 2012, while those applications were pending, and,

therefore, the court found that those grounds should be denied for abuse of the writ. *See id.* at 58-59 (citing TEX. CODE CRIM. PROC. art. 11.07 § 4(a)). But the state court found that the third and fourth grounds – concerning "the State's knowledge of this information and its failure to disclose it" – "could not have been presented in the original applications," and the court reviewed those grounds on their merits. *Id.* at 59.

The third and fourth grounds adjudicated in state court parallel the third and fourth grounds raised in Correas's current Section 2254 application. *See* Dkt. No. 3 at 7-8. And the undersigned will address those below, after taking up the first two (procedurally-barred) grounds and Correas's actual innocence assertions.

I. **Actual Innocence**

To the extent that through any ground in the federal habeas petition Correas asserts a stand-alone claim of actual innocence, such a claim is itself not an independent ground for federal habeas corpus relief and therefore should be denied. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993)); *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014) (collecting cases); *see also Schlup v. Delo*, 513 U.S. 298, 314 (1995) (distinguishing "procedural" claims of innocence, which are based on a separate, underlying claim that a defendant was denied "the panoply of protections afforded to criminal defendants by the Constitution").

## II. Procedurally Defaulted Claims

### A. Ineffective Assistance of Counsel [Ground 1]

Correas first asserts that his trial counsel was constitutionally ineffective because any investigation counsel performed did not reveal the drug addiction issue discussed in the *Dallas Morning News* article. *See, e.g.,* Dkt. No. 3 at 6. Although Correas raised an ineffective-assistance-of-counsel ("IAC") claim in his first round of state habeas applications, *see, e.g.,* Dkt. No. 13-16 at 57-58, the state-court adjudications of those petitions are not now before this Court. And, because Correas failed to include an IAC claim in his second round of state habeas applications – the adjudications of which are before this Court for review – Correas has failed to exhaust this IAC claim.

This Court may not, moreover, consider the current IAC claim, focused on counsel's failure to uncover the information revealed in the *Dallas Morning News* article, exhausted because a previous IAC claim focused on unrelated allegations was exhausted. *See* Dkt. No. 13-16 at 35-37 (counsel's affidavit addressing these IAC allegations: "(1) Why did you chose not to make an opening statement; (2) Were you able to communicate adequately with your client, even though you do not speak Spanish; and, (3) Did you request the assistance of any medical or mental health experts to assist with Mr. Correas' defense, and if not, why not."). As the United States Court of Appeals for the Fifth Circuit has explained:

> "The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court" so that a state court has had a "fair opportunity to apply controlling legal

> principles to the facts bearing on the petitioner's constitutional claim." *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004).
>
> Exhaustion inquiries are case and fact-specific and "dismissal is not required when evidence presented for the first time in a habeas proceeding supplements, but does not fundamentally alter, the claim presented to the state courts." *Anderson v. Johnson*, 338 F.3d 382, 387 n.8 (quoting *Caballero v. Keane*, 42 F.3d 738, 741 (2d Cir. 1994)). But "[s]ubstantial evidence rising to a '180 degree turn' will render a claim unexhausted." *Id.* at 389 n.26. Furthermore, a petitioner has not exhausted his state claim when he offers material additional factual allegations and evidentiary support to the federal court that were not presented to the state court. *Dowthitt v. Johnson*, 230 F.3d 733, 746 (5th Cir. 2000); *Barrientes v. Johnson*, 221 F.3d 741, 761 (5th Cir. 2000); *Graham v. Johnson*, 94 F.3d 958, 968-69 (5th Cir. 1996).

*Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) (internal citation modified); *see id.* at 958 ("Because Campbell's state habeas claim only briefly mentioned counsel's failure to investigate Campbell's background and instead focused on counsel's failure to present testimony from a 'mitigation expert,' Campbell's claim took a '180 degree turn' in federal court when he presented for the first time specific factual allegations that Campbell's state habeas counsel did not investigate his background and allegations of the facts they would have uncovered if they had.").

The current IAC claim is therefore unexhausted, *see* 28 U.S.C. § 2254(b)(1)(A), as its factual and legal bases have not been presented to the CCA, the highest available state court, for review in a procedurally correct manner, *see Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir. 1989); *Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *see also Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) ("where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement"

(quoting *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (in turn quoting *Vela v. Estelle*, 708 F.2d 954, 958 n.5 (5th Cir. 1983)))).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001). An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

The unexhausted IAC claim is also procedurally barred because Correas has not

shown that the claim would be allowed in a subsequent habeas proceeding in state court under Texas law. Nor has he asserted the "fundamental miscarriage of justice" exception to procedural bar or demonstrated that the IAC claim meets the very limited exception to procedural bar created in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) – found applicable to Texas cases in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013) – by demonstrating that the underlying IAC claim is "substantial.... [T]hat is, that it has 'some merit.'" *Crutsinger v. Stephens*, 576 F. App'x 422, 430 (5th Cir. 2014) (per curiam) (quoting *Martinez*, 132 S. Ct. at 1318); *see id.* (noting that, "if a petitioner's [IAC] claim is not substantial enough to earn a [certificate of appealability], it is also not substantial enough to form the basis for excusing the procedural default" (citing *Martinez*, 132 S. Ct. at 1318-19 (in turn citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)))); *see also Speer v. Stephens*, 781 F.3d 784, 785 & n.4 (5th Cir. 2015) (noting the "limited nature" and "narrowness" of the exception).

## B. False Testimony Claim [Ground 2]

The second ground raised in the Section 2254 application is that Correas is "actually innocent based on newly discovered evidence [the newspaper article concerning Mariela's drug addiction], that [she] gave false testimony." Dkt. No. 3 at 7. This ground parallels the second ground raised in the applicable state habeas applications – that the newspaper article is evidence that the complainant at issue gave false testimony. As such, this Court is barred from reviewing the claim because the last state court to review this claim found that it should be denied as an abuse of the writ. *See* Dkt. No. 13-16 at 58-59.

A federal court may not consider the merits of a habeas claim where a state court has denied relief due to a procedural default, *see Sawyer*, 505 U.S. at 338, if the state court opinion contains a "plain statement" that its decision rests on adequate and independent state grounds, *see Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *see also Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006) ("A federal habeas court 'will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground.'" (quoting *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004))). But, to be an adequate ground for denying relief, the state procedural rule must be strictly or regularly applied to similar claims. *See Hathorn v. Lovorn*, 457 U.S. 255, 262-63 (1982); *see also Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999).

> The Texas abuse-of-the-writ doctrine precludes Texas courts from granting habeas petitions where the petitioner has failed, without cause, to address the same issue on direct appeal or in a previous petition. Set forth in *Ex parte Dora*, 548 S.W.2d 392, 393-94 (Tex. Crim. App. 1977), the doctrine allows the court, after finding that petitioner has abused the writ, to refuse to accept or file the habeas petition absent a showing of cause that the contention could not have been raised in the prior proceeding. The doctrine bars review of issues that were not raised on direct appeal and of issues that were not raised in prior state habeas petitions.

*Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).

While, in *Lowe*, the Fifth Circuit

> failed to apply the Texas state abuse of the writ doctrine as an adequate and independent state ground because the Texas courts did not regularly and strictly apply abuse of the writ rules[, *see* 48 F.3d at 876,] in *Ex parte Barber*, 879 S.W.2d 889 (Tex. Crim. App. 1994), the [CCA] announced that it would as a rule dismiss as an abuse of the writ a successive state application for writ of habeas corpus which raised issues that existed at the time a prisoner filed his initial state application. The Fifth Circuit subsequently concluded Texas courts were regularly and strictly applying

> the abuse of the writ doctrine and that the doctrine could therefore be relied upon as an adequate and independent state ground forming the basis for application of the procedural default doctrine. *Emery v. Johnson*, 139 F.3d 191, 195 (5th Cir. 1997); *Fearance v. Scott,* 56 F.3d 633, 642 (5th Cir. 1995).

*Hawthorne v. Director, TDCJ-CID*, No. 9:12cv116, 2015 WL 5604684, at *2 (E.D. Tex. Sept. 23, 2015).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. But, because Correas has failed to establish cause and actual prejudice for this default or that failure to consider this claim now will result in a fundamental miscarriage of justice, the claim is procedurally barred.

## III.   Review of State-Merits Adjudications

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.,*

*Dowthitt*, 230 F.3d at 756-57 (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby*, 359 F.3d at 713; *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists

could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. ___, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court

adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th

Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

### IV. *Brady/Giglio/Napue* Claims [Grounds 3 & 4]

Correas's third and fourth claims are that the State failed to disclose that complainant suffered from a drug addiction [Ground 3] and that the State suborned perjury by portraying the complainant "as an innocent and honest young school girl" [Ground 4]. *See, e.g.,* Dkt. No. 3 at 7-8. Ground 3 states a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), while Ground 4 states a claim under *Giglio v. United States*, 405 U.S. 150, 153 (1972)/*Napue v. Illinois*, 360 U.S. 264, 271 (1959). *Cf. Ogle v. Johnson*, 696 F. Supp. 2d 1345, 1362-63 (S.D. Ga. 2009) ("A prosecutor's duty not to knowingly present false evidence is related to, but conceptually distinct from, the prosecutor's duty to reveal exculpatory evidence to the defense." (citing *Brown v. Wainwright*, 785 F.2d 1457, 1464 (11th Cir. 1986))); *see also Brady*, 373 U.S. at 87 (suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the prosecution").

"A successful *Brady* claim has three elements: 'The evidence at issue must be

favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Rocha v. Thaler*, 619 F.3d 387, 393 (5th Cir. 2010) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)); *see also Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008) (nothing as to *Brady*'s third "basic element" that there must be "a reasonable probability that prejudice ensued – in other words, 'materiality'").

Materiality "is generally the most difficult element to prove in a *Brady* claim," *Coleman v. Cain*, Civ. A. No. 07-3655, 2014 WL 348541, at *10 (E.D. La. Jan. 31, 2014) (citing *Cobb v. Thaler*, 682 F.3d 364, 377 (5th Cir. 2012)), and "is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict,'" *Rocha*, 619 F.3d at 397 (quoting *Banks v. Dretke*, 540 U.S. 668, 698 (2004) (in turn quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995))).

To establish materiality, a court must analyze "the suppressed evidence collectively, not item by item," *Kyles*, 514 U.S. at 437, but materiality need not be demonstrated "by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal," *id*. at 434; *accord Spence v. Johnson*, 80 F.3d 989, 994 (5th Cir. 1996); *see also Dennis v. Wetzel*, 966 F. Supp. 2d 489, 516 (E.D. Pa. 2013) (discussing a state court's misapplication of *Kyles* in the context of AEDPA: "'A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been

enough left to convict.' Indeed, the *Kyles* Court rebuked the dissent for assuming that Kyles must lose on his *Brady* claim because there would still have been enough evidence to convict, even if the favorable evidence had been disclosed. 'The rule is clear, and none of the *Brady* cases has ever suggested that sufficiency of the evidence (or insufficiency) is the touchstone.' Evidence does not have to upset every aspect of the prosecution's case to be material under *Brady*; rather, the question is whether the defendant received a fair trial in the absence of the undisclosed evidence." (quoting 514 U.S. at 434-35 & n.8)).

Materiality, moreover, "depends almost entirely on the value of the evidence relative to the other evidence mustered by the state." *Rocha*, 619 F.3d at 397 (quoting *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)).

> Thus, when the undisclosed evidence is merely cumulative of other evidence in the record, no *Brady* violation occurs. Similarly, when the testimony of the witness who might have been impeached by the undisclosed evidence is strongly corroborated by additional evidence supporting a guilty verdict, the undisclosed evidence generally is not found to be material. Conversely, if the impeaching evidence would seriously undermine the testimony of a key witness on an essential issue or there is no strong corroboration, the withheld evidence has been found to be material.

*Sipe*, 388 F.3d at 478 (citation footnotes, internal quotation marks, and brackets deleted).

Relatedly, "[t]he Due Process Clause of the Fourteenth Amendment forbids the government from knowingly using, or failing to correct, false testimony." *United States v. Mason*, 293 F.3d 826, 828 (5th Cir. 2002) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 271 (1959)); *see also Isaac v. Cain*, 588

F. App'x 318, 327 (5th Cir. 2014) (per curiam) ("Under *Napue*, 'a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.'" (quoting 360 U.S. at 269; citations omitted).

"To establish a due process violation based on the government's use of false or misleading testimony, a petitioner must show (1) that the witness's testimony was actually false, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false." *Fuller v. Johnson*, 114 F.3d 491, 496 (5th Cir. 1997). But "due process is [ ] implicated by the prosecution's introduction or allowance of false or perjured testimony [only when] the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements." *United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981) (citations omitted). Thus,

> [w]hen attempting to show perjured testimony, the false or misleading nature of certain testimony cannot be established simply by pointing to contradictory testimony from other witnesses, inconsistencies within a witness's testimony, or conflicts between or among written statements and live testimony. Such matters go only to the weight of the evidence and the credibility of the witness.

*Craig v. Director, TDCJ-CID*, No. 5:07cv167, 2013 WL 4711483, at *14 (E.D. Tex. Aug. 30, 2013) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)).

The state habeas trial court provided detailed findings as to Grounds 3 and 4 and essentially concluded that complainant's drug addiction, which was evidence suppressed by the State, was not material. *See* Dkt. No. 13-16 at 59-63. Specifically, the state court concluded, as to the attempted aggravated assault convictions,

>that it is extremely unlikely that, had Mariela's drug use been disclosed to the defense as required by law and then used to impeach her at trial, the result of the trial would have been different. First, the Court notes that it was Mariela's sister, Melanie, who actually identified Applicant as the perpetrator of all three offenses. Moreover, Melanie, in addition to Mariela, testified that Applicant ordered Mariela to take off her (Mariela's) pants and physically assaulted her. In other words, Mariela's testimony was fully corroborated by Melanie's testimony. Second, there were pictures of Mariela's bloody lip introduced at trial to further corroborate her testimony that Applicant physically assaulted her. Finally, Mariela's and Melanie's mother and aunt both testified that the mother returned home to a locked front door, heard her children crying and, when the children's uncle jumped on the porch to let them in the apartment, Applicant was found in the bedroom with the children and holding Melanie. In sum, Mariela's drug use would have been of marginal relevance and the evidence against Applicant for the attempted aggravated sexual assault of both Mariela and Melanie was overwhelming.
>
>The Court further finds that the burglary of a habitation charge was not based at all on Mariela's testimony. Indeed, it was based on the testimony of Melanie that she and their third sister, Melissa, attempted to close the door when Applicant sought to enter the apartment uninvited.

*Id.* at 62-63.

Correas's third and fourth grounds should be denied, because he has failed to show that the state court's decision constitutes an "unreasonable application" of, principally, *Brady* as well as *Giglio/Napue*. Said differently, Correas has not shown that the state court's decision as to these claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

## Recommendation

The application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all

parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 23, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE